## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEREMIAH BUTCHER,** | : | |
| **Petitioner,** | : | |
| | : | **No. 1:20-cv-01994** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **CATRICIA HOWARD,** | : | |
| **Respondent** | : | |

### MEMORANDUM

On October 30, 2020, pro se Petitioner Jeremiah Butcher ("Petitioner"), who is currently incarcerated at the Federal Correctional Institution Allenwood-Medium in White Deer, Pennsylvania ("FCI Allenwood-Medium"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  Petitioner maintains that the Bureau of Prisons ("BOP") is violating his Eighth Amendment rights by failing to provide safe living conditions during the COVID-19 pandemic.  (Id.)  Specifically, Petitioner asserts that: (1) his Hepatitis C and weight make him more vulnerable to contracting COVID-19; (2) social distancing is impossible at FCI Allenwood-Medium and the institution is providing inadequate testing; (3) FCI Allenwood-Medium has an inadequate HVAC system to eliminate COVID-19; (4) the lockdown for the pandemic exacerbates his depression; and (5) he was denied a COVID-19 test on October 6, 2020 when he went to the medical department for chest pains, a headache, and dizziness.  (Id. at 6-9.)  As relief, he requests that the Court order the BOP to "enlarg[e] their home confinement for all non violent, elderly 65 and older, and all of the medically vulnerable subclass that meet the [Centers for Disease Control and Prevention ("CDC")] guideline criteria, along with anyone with PTSD, depression, anxiety, bipolar, and anyone who has a cognitive impairment and is not expected to recover."  (Id. at 9.)  Following an

Order to show cause (Doc. No. 6), Respondent filed a response on December 7, 2020 (Doc. No. 8).  To date, Petitioner has filed neither a traverse nor a motion seeking an extension of time to do so.  Accordingly, because the time period for filing a traverse has expired, Petitioner's § 2241 petition is ripe for disposition.

I.      **BACKGROUND**

      A.      **The BOP's Response to COVID-19**

The BOP has had a Pandemic Influence Plan in place since 2012.  (Doc. No. 8-5.)  To mitigate the spread of COVID-19, the BOP has modified its operations nationally.  (Doc. No. 8-6.)  These modified operations provide for limited inmate movement in order to "prevent congregate gathering and maximize social distancing."  (Id. at 1.)  The BOP has implemented enhanced health screenings of staff at all locations.  (Id. at 1, 3.)  Moreover, all newly admitted inmates are screened for COVID-19.  (Id. at 2.)  Such screening includes a symptoms screen, temperature check, and an approved viral PCR test.  (Id.)  Inmates who are asymptomatic and/or test positive are placed in medical isolation; inmates who are asymptomatic and test negative are placed in quarantine.  (Id.)  Inmates remain in isolation or quarantine until they test negative or are cleared by medical staff.  (Id.)  All inmates are tested again before transfer to a new facility.  (Id.)  Inmate movement "in small numbers" is authorized for commissary, laundry, showers three (3) times per week, and telephone and TRULINCS access.  (Id.)  The BOP is also requiring that contractor access be restricted to those performing essential services, religious worship services, and necessary maintenance.  (Id. at 3.)  All contractors "must undergo a COVID-19 screening and temperature check prior to entry."  (Id.)  All volunteer visits, except for visitation volunteers

2

and faith-based volunteers, have been suspended "unless approved by the Deputy Director of the BOP."  (Id.)

      **B.**      **Use of Home Confinement by the BOP**

      The BOP has exclusive discretion to "designate the place of [a] prisoner's imprisonment."  See 18 U.S.C. § 3621(a).  Pursuant to this authority, the BOP may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."  See 18 U.S.C. § 3624(c)(2).  The BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."  See id.

      On March 26, 2020, the Attorney General issued a Memorandum encouraging the BOP to prioritize home confinement, as appropriate, in response to the COVID-19 pandemic.  (Doc. No. 8-3.)  To determine whether home confinement should be authorized, the Attorney General directed the BOP to consider "the totality of circumstances for each individual inmate, the statutory requirements for home confinement," and the following non-exhaustive discretionary factors: (1) the age and vulnerability of the inmate to COVID-19, in accordance with Centers for Disease Control ("CDC") guidelines: (2) the security level of the facility currently holding the inmate; (3) the inmate's conduct in prison; (4) the inmate's score under the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN"); (5) whether the inmate "has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety"); and (6) the inmate's crime of conviction and "assessment of the danger posed by the inmate to the community."  (Id. at 1.)

On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was implemented, authorizing the Attorney General and the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" due to the COVID-19 pandemic.  See CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020).  On April 3, 2020, the Attorney General issued a memorandum authorizing the Director of the BOP to maximize the use of home confinement for appropriate inmates held at facilities where the Director determines COVID-19 has materially affected operations.  (Doc. No. 8-4.)  This memorandum served to increase the number of inmates to be assessed for home confinement and directed that the BOP prioritize the most vulnerable inmates at the most affected facilities.  (Id. at 1.)  The memorandum stressed that the BOP should "continue making the careful, individualized determinations BOP makes in the typical case" to remain faithful to its duty to protect the public.  (Id. at 3.)  As of January 4, 2021, the BOP has 8,020 inmates on home confinement, with a total number of 19,654 inmates being placed on home confinement since March 26, 2020.  See COVID-19 Home Confinement Information, https://www.bop.gov/coronavirus (last accessed Jan. 4, 2021 7:16 a.m.).

### C.    Facts Regarding Petitioner

Petitioner is currently serving a 120-month term of imprisonment imposed by the United States District Court for the Western District of Missouri for possession with intent to distribute methamphetamine and being a felon in possession of a firearm.  (Doc. No. 8-2 at 1.)  He has been incarcerated at FCI Allenwood-Medium since September 9, 2019.  (Id.)  During his incarceration, Petitioner has been sanctioned for ten (10) separate disciplinary violations, seven (7) of which were related to possessing or using drugs or alcohol.  (Id. at 8-12.)  He has been

assigned a medium security classification and a high risk for recidivism according to his PATTERN score.  (Id. at 6.)

Petitioner is 47 years old and weighed 219 pounds[1] as of August 5, 2020.  (Id. at 16, 27.) He has been assigned CARE1 medical status, meaning that he is healthy or requires only simple chronic care.  (Id. at 6; Doc. No. 8 at 7.)  Petitioner has received treatment for Hepatitis C during his incarceration.  (Doc. No. 8-2 at 27.)  From April 15, 2020 until June 9, 2020, he received Mavyret, an antiviral medication used to treat Hepatitis C.  (Id. at 2, 24-26.)  As of September 15, 2020, his Hepatitis C viral load was undetectable.  (Id. at 2, 27.)

On November 16, 2020, Petitioner tested positive for COVID-19.  (Id. at 2, 13.)  He was asymptomatic at the time.  (Id. at 13.)  From November 17, 2020 until November 26, 2020, medical staff routinely screened Petitioner for symptoms of COVID-19.  (Id. at 14-22.)  On November 17 and 18, 2020, Petitioner reported experiencing a cough, body aches, and loss of taste or smell.  (Id. at 21-22.)  On November 18, 2020, Petitioner requested Tylenol for body aches, and he was given a seven (7)-day supply of acetaminophen to take as needed.  (Id. at 2, 23.)  Petitioner's vital signs remained normal at all screenings.  (Id. at 14-18.)  "Petitioner has not required any additional medical intervention since November 18, 2020."  (Id. at 2.)  On November 26, 2020, medical staff designated Petitioner as being recovered from COVID-19. (Id. at 6.)  As of January 4, 2021, there were 141 inmate and twenty-two (22) staff COVID-19 cases at FCI Allenwood-Medium.  See COVID-19 Coronavirus,

---

[1] In his § 2241 petition, Petitioner maintains that he is more susceptible to contracting COVID-19 because he weighs over 300 pounds.  (Doc. No. 1 at 7.)  Petitioner's assertion, however, is belied by his medical records.

https://www.bop.gov/coronavirus (select "Full breakdown and additional details" hyperlink and search for FCI Allenwood-Medium) (last accessed Jan. 4, 2021 7:17 a.m.).

Under the standards set forth in the Attorney General's memoranda, Petitioner is not a priority candidate for home confinement because he is housed at a medium security institution and has a high risk of recidivism according to his PATTERN score. (Doc. Nos. 8 at 14; 8-2 at 6.) The BOP's computerized record of Petitioner's administrative remedy submissions indicate that he has filed no administrative remedies relating to home confinement. (Doc. No. 8-2 at 3-5.) All of the administrative remedies that Petitioner has filed during his incarceration relate to appeals of disciplinary hearings. (Id.)

## II.     DISCUSSION

Respondent asserts that Petitioner's § 2241 petition should be denied because: (1) Petitioner failed to exhaust his administrative remedies; (2) BOP decisions concerning home confinement are not subject to judicial review; and (3) Petitioner cannot establish an Eighth Amendment violation.[2] (Doc. No. 8 at 9.) The Court considers each argument in turn.

### A.     Exhaustion of Administrative Remedies

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a § 2241 petition. See Moscato v. Fed. Bureau of Prisons,

---

[2] The United States Court of Appeals for the Third Circuit recently concluded that immigration detainees could proceed under § 2241 to challenge allegedly unconstitutional conditions of confinement due to the COVID-19 pandemic. See Hope v. Warden York Cty. Prison, 972 F.3d 310, 324-25 (3d Cir. 2020). The Third Circuit cautioned that it was "not creating a garden variety cause of action." See id. at 324. In light of Hope, the Court "will assume, without deciding, that it has jurisdiction under § 2241 to consider a federal prisoner's COVID-19 related conditions of confinement claim." See Byrne v. Ortiz, No. 20-12268 (RBK), 2020 WL 7022670, at *3 (D.N.J. Nov. 30, 2020).

98 F.3d 757, 760 (3d Cir. 1996).  Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." See id. at 761-62 (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)).  Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice."  See id. at 762.  Exhaustion, however, is not required when it would not promote these goals, such as when exhaustion would be futile.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998).

This Court has recognized that a § 2241 petitioner seeking release to home confinement due to the COVID-19 pandemic must first exhaust his administrative remedies.  See Gottstein v. Finley, No. 3:20-cv-935, 2020 WL 3078028, at *3-4 (M.D. Pa. June 10, 2020).  To do so, an inmate must file a request with the Warden and then file an appeal to the BOP's Regional Director within twenty (20) days of the date of the Warden's response.  See 28 C.F.R. §§ 542.14 & 542.15(a).  If his appeal to the Regional Director is denied, the inmate must appeal that decision to the BOP's General Counsel within thirty (30) days.  See id. § 542.14.  The appeal to the General Counsel is the final level of administrative review.  See id.

In his § 2241 petition, Petitioner asks that the Court waive the exhaustion requirement because exhaustion would be futile.  (Doc. No. 1 at 9.)  He suggests that he did not pursue administrative remedies because he did not "realize how serious this virus would get and [he saw] people in worse condition than [him] get denied."  (Id. at 2.)  The Third Circuit, however,

recently noted that "strict compliance with . . . exhaustion requirement[s] takes on added—and critical—importance" during the COVID-19 pandemic "[g]iven the BOP's shared desire for a safe and healthy prison environment."  See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  Based on this principle, courts within the Third Circuit have routinely dismissed unexhausted requests for home confinement due to the pandemic.  See, e.g., Adams v. Trate, No. 1:20-cv-237, 2020 WL 7337806, at *2 (W.D. Pa. Dec. 14, 2020); Gottstein, 2020 WL 3078028, at *3; Jackson v. White, No. 3:20-cv-919, 2020 WL 3036075, at *5-7 (M.D. Pa. June 5, 2020); Cordaro v. Finley, 3:10-cr-75, 2020 WL 2084960, at *4 (M.D. Pa. Apr. 30, 2020).  "Exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates that he will be unsuccessful in his administrative appeals."  Malvestuto v. Martinez, No. 1:09-cv-1339, 2009 WL 2876883, at *3 (M.D. Pa. Sept. 1, 2009); see also Sanchez v. Lane, No. 4:18-cv-1431, 2019 WL 1645231, at *3-4 (M.D. Pa. Mar. 5, 2019) (concluding that the inmate-petitioner's § 2241 petition was subject to dismissal for failure to exhaust because the petitioner "never fully and properly appealed [his] grievance because he apparently deemed the grievance process to be a waste of time"), report and recommendation adopted, 2019 WL 1620339 (M.D. Pa. Apr. 16, 2019).  The Court agrees with such reasoning and, therefore, concludes that Petitioner's § 2241 petition must be denied for failure to exhaust his administrative remedies.  Nevertheless, the Court will address the merits of his petition below.

**B.    Merits of Petitioner's § 2241 Petition**

**1.    Home Confinement Request**

Even if Petitioner had exhausted his request for home confinement, the Court could not grant his request because "the CARES Act provides the discretion for determining early home

confinement release solely to the BOP."  See <u>United States v. Mathews</u>, No. 2:86-cr-197, 2020 WL 6781946, at *2 (E.D. Pa. Nov. 18, 2020); <u>see</u> <u>also</u> <u>Adams</u>, 2020 WL 7337806, at *2 (collecting cases); <u>United States v. Robinson</u>, No. 4:07-cr-389-10, 2020 WL 5793002, at *5 n.2 (M.D. Pa. Sept. 28, 2020) (noting that "the Court does not have the authority to grant [a request for home confinement] in that the determination of an inmate's place of incarceration is committed to the discretion of the BOP director").  Attorney General Barr "used this authority and set out the factors to guide the BOP's determination in his March 26 and April 3 memoranda."  See <u>Aigebkaen v. Warden</u>, No. 20-5732 (NLH), 2020 WL 6883438, at *4 (D.N.J. Nov. 24, 2020).

The plain text of the CARES Act grants additional discretion to the Attorney General and the BOP; it does not require the BOP to release all at-risk, non-violent inmates on home confinement.  Because "Congress has not identified any further circumstance in which the Bureau either must grant" home confinement "or is forbidden to do so . . . all [the Court] must decide is whether the Bureau, the agency empowered to administer" the home confinement program, "has filled the statutory gap 'in a way that is reasonable.'"  See <u>Lopez v. Davis</u>, 531 U.S. 230, 242 (2001) (quoting <u>NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.</u>, 513 U.S. 251, 257 (1995)).  Under the standards set forth in the Attorney General's memoranda, Petitioner is not a priority candidate for home confinement because he is housed at a medium security institution and has a high risk of recidivism according to his PATTERN score.  (Doc. No. 8-2 at 6.)  Moreover, although Petitioner does have Hepatitis C, it is controlled with an undetectable viral load, and he is designated as a CARE1 medical status, requiring only simply

chronic care.[3]  (Id. at 6, 27.)  Petitioner has not demonstrated that the BOP's interpretation of the

CARES Act is unreasonable as applied to him.  The Court, therefore, cannot grant Petitioner's

request to be released on home confinement.

### 2.     Eighth Amendment Claim

In his § 2241 petition, Petitioner asserts, in a conclusory fashion, that the conditions of

his confinement at FCI Allenwood-Medium violate the Eighth Amendment.  (Doc. No. 1 at 2.)

Specifically, Petitioner asserts that: (1) his Hepatitis C and weight make him more vulnerable to

contracting COVID-19; (2) social distancing is impossible at FCI Allenwood-Medium and the

institution is providing inadequate testing; (3) FCI Allenwood-Medium has an inadequate HVAC

system to eliminate COVID-19; (4) the lockdown for the pandemic exacerbates his depression;

and (5) he was denied a COVID-19 test on October 6, 2020 when he went to the medical

department for chest pains, a headache, and dizziness.  (Id. at 6-9.)

The Eighth Amendment guarantees a prisoner's right to be free from "cruel and unusual

punishments" while in custody.  See Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) (quoting

Whitley v. Albers, 475 U.S. 312, 318 (1986) (quoting U.S. Const. amend. VIII)).  An Eighth

Amendment claim challenging conditions of confinement has two elements: (1) the deprivation

asserted must be "sufficiently serious" to violate the Constitution, and (2) the prison official or

officials responsible for the deprivation "must have a sufficiently culpable state of mind."  See

---

[3] The CDC has noted that individuals with Hepatitis C may be at higher risk for severe illness from COVID 19, particularly if the underlying condition is not well controlled.  See CDC, What to Know About Liver Disease and COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (select "Are people with hepatitis B or hepatitis C at higher risk for COVID-19 than other people") (last accessed Dec. 18, 2020).  Petitioner's medical records, however, indicate that although he tested positive for COVID-19 on November 16, 2020, he needed only minimal medical care.  (Doc. No. 8-2 at 2, 13-23.)

Thomas v. Tice, 948 F.3d 133, 138 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  The second element can be proven by establishing that prison officials "acted with deliberate indifference to the inmate's health or safety or [to] conditions of confinement that violated the inmate's constitutional rights."  See id. (citation omitted).  Stated differently, prison officials must "both know of and disregard an excessive risk to inmate health or safety" or a violation of the inmate's constitutional rights.  See Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 373 (3d Cir. 2019) (citations omitted).

The Court "recognize[s] that the prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuited for social distancing."  See Rodriguez-Francisco v. White, No. 1:20-cv-1076, 2020 WL 4260766, at *3 (M.D. Pa. July 24, 2020).  However, the "inability to practice social distancing is not, in and of itself, sufficiently serious to implicate a violation of the Eighth Amendment."  See Engelund v. Doll, No. 4:20-cv -604, 2020 WL 1974389, at *9 (M.D. Pa. Apr. 4, 2020).  Nothing in the record suggests that FCI Allenwood-Medium is not complying with the modified parameters of operation set forth supra.  Furthermore, Petitioner has provided no evidence to support his claim that the lockdown imposed in response to the COVID-19 pandemic has exacerbated his depression.  While it is unfortunate that Petitioner recently contracted COVID-19, the record reflects that his health was closely monitored by medical staff and that he recovered after needing only minimal medical care.  (Doc. No. 8-2 at 2, 13-23.)

Furthermore, contrary to Petitioner's assertion, FCI Allenwood-Medium has been testing for the COVID-19 virus.  As of January 4, 2021, 929 inmates have been tested, 459 with positive results.  See COVID-19 Coronavirus, https://www.bop.gov/coronavirus (select "Learn more

about the data and view individual facility stats" hyperlink) (last accessed Jan. 4, 2021 7:19 a.m.).  Staff members have also been tested, with twenty-two (22) testing positive and fourteen (14) fully recovered.  See COVID-19 Coronavirus, https://www.bop.gov/coronavirus (select "Full breakdown and additional details" hyperlink and search for FCI Allenwood-Medium) (last accessed Jan. 4, 2021 7:19 a.m.).  Thus, even when considering Petitioner's underlying Hepatitis C condition, he has neither identified a sufficiently serious deprivation that rises to the level of an Eighth Amendment violation nor has he established that officials at FCI Allenwood-Medium have acted with deliberate indifference to his health or safety.  See Hope v. Warden York Cty. Prison, 972 F.3d 310, 330 (3d Cir. 2020) (noting that "a failure to eliminate all risk [does not] establish that the Government [has been] deliberately indifferent to [inmates'] serious medical needs"); Rodriguez-Francisco, 2020 WL 4260766, at *5 (concluding that habeas relief was not warranted because "FCI Allenwood Low officials [were] well aware of the COVID-19 pandemic and ha[d] taken numerous steps to mitigate the risk of infection and spread in their facility").  Petitioner simply "has not identified, let alone proven, any official conduct that exhibits deliberate indifference to the health or safety or prisoners during this unprecedented worldwide pandemic."  See id.  Thus, he is not entitled to the habeas relief he seeks.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  An appropriate Order follows.